Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 5809 | **DATE** | 12/12/2001 |
| **CASE TITLE** | O'Donnell vs. The University of Chicago | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendant's motion to dismiss with prejudice is granted. Enter Memorandum Opinion and Order.
(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| ✓ | Notices mailed by judge's staff. | DEC 13 2001 date docketed |
| | Notified counsel by telephone. | |
| | Docketing to mail notices. | |
| | Mail AO 450 form. | cm docketing deputy initials |
| | Copy to judge/magistrate judge. | |
| rs | courtroom deputy's initials | 01 DEC 12 PM 4:40 date mailed notice |
| | Date/time received in central Clerk's Office | mailing deputy initials |

Document Number
10

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES G. O'DONNELL, | ) | |
| Plaintiff, | ) ) | |
| | ) | No. 01 C 5809 |
| v. | ) ) | Judge Blanche M. Manning |
| THE UNIVERSITY OF CHICAGO, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff James G. O'Donnell, an osteopathic physician, brought this *pro se* action against the University of Chicago. The University has moved to dismiss the complaint under Rule 12(b), Fed.R.Civ.P., for lack of federal jurisdiction, or, alternatively, for failure to state a claim upon which relief may be granted. Dr. O'Donnell responded to the motion, and filed an amended complaint.

Dr. O'Donnell's complaint, based on a form complaint for employment discrimination suits, alleges that he was denied admission to the University's Irving B. Harris Graduate School of Policy Studies, and because he was not admitted he was evicted from his University-owned apartment. Dr. O'Donnell further alleges that "the Defendant's failure to admit me to the program limited my qualifications necessary to be hired for a health administration position with the defendant." He alleges that because he was not a student at the University, he was refused access to the University's library. Dr. O'Donnell states that he believes he has been discriminated against on the basis of his race (white), sex (male), national origin (Irish-American), religion (Roman Catholic), and age (54). Seeking $100,000,000 in punitive damages (the only relief requested), Dr. O'Donnell invokes Titles VI and VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d *et seq.* and 2000e *et seq.*, Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, the Age Discrimination in Employment Act (ADEA), 42 U.S.C. § 6102, *et seq.*, and the Civil Rights Act of 1866, 42 U.S.C. § 1981.

In ruling on a motion to dismiss, the court assumes that the allegations in the complaint are true and draws every reasonable inference in the plaintiff's favor. *Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999). Nevertheless, a complaint must give "some minimum description of the defendant's complained-of conduct" to allow the court to determine at the outset of the litigation whether the plaintiff has any basis for the suit, *Ryan v. Mary Immaculate Queen Center*, 188 F.3d 857, 860 (7th Cir. 1999), and a plaintiff can plead himself out of court by pleading facts that undermine the allegations set forth in his complaint. *Henderson*, 196 F.3d at 846.

Because exhibits attached to a complaint are treated as part of the complaint for all purposes, Rule 10(c), Fed.R.Civ.P., the court has reviewed the following documents attached to (and in some cases incorporated within), the complaint:

(1) Copy of EEOC charge submitted by Dr. O'Donnell dated March 23, 2001, alleging:

> On or about July 12, 2000, Respondent informed me that it had purchased the apartment building in which I resided. Respondent informed me that it intended to use the building for student housing and that I must vacate the premises by August 31, 2000. Subsequently, I attempted to apply for admission to the Respondent university's Health Administration Public Policy Program. Respondent would not accept my application for admission. Because I was not admitted, I was forced to vacate my apartment. In addition, Respondent's failure to admit me to the program limited my qualifications necessary to be hired for a Health Administration position with Respondent.

(2) Copy of EEOC right-to-sue letter issued in response to (1) above, dated April 30, 2001, stating that the charge does not allege a violation of antidiscrimination statutes enforced by the EEOC.

(3) Copy of hand-written letter, apparently written on graph paper, dated "Aug 7, 2000 - Aug 14, 2000" and addressed to "Dear Teacher." The letter asks the recipient to send "any and all but not limited to everything I would need to gain entry to study personnally [sic] under you. Any and all help in this matter would be greatfully [sic] appreciated. Please feel free to contact me directly; as per your earliest possible convenience. Please respond to me in writing."

(4) Photocopies (many duplicative) of stamped envelopes addressed to 29 members of the University's faculty, apparently transmitting copies of (3) above. A note on each gives a date "8-15-2000."

(5) Informational material regarding the University's Master of Public Policy program.

2

(6) Copy of letter dated August 10, 2000, addressed to Richard Sewell, M.P.H., Executive Director of the Chicago Health Policy Research Council at the University, complaining that he had been "denied access to your educational program" because he had received no response to his requests for an application.

(7) Receipt for payment for certified mail charges from the U.S. Postal Service for letter (6) above.

(8) Composite photocopy of (a) a letter dated July 12, 2000 from Wolin-Levin, Inc. advising Dr. O'Donnell that his lease would not be renewed and that he was required to vacate his apartment on August 31, 2000, (b) a business card with the name of Crystal C. Johnson, Assistant to the Dean of Students & Director of Admissions of the Irving B. Harris Graduate School of Policy Studies, and (c) a business card with the name of Phyllis Brust, Director of Career Services at the Irving B. Harris Graduate School of Policy Studies.

(9) Photocopy of an envelope from Wolin-Levin addressed to Dr. O'Donnell.

(10) Copy of letter dated August 15, 2000, addressed to David O. Meltzer, M.D., Ph.D., but with a note "Please deliver to Dean of the Law School." The letter purports to be an inquiry under the Freedom of Information Act and requests copies of records relating to Dr. O'Donnell.

(11) Copy of notice for publication dated September 27, 2000, prepared by Wolin-Levin directing Dr. O'Donnell to appear and defend a suit for possession of Apartment 4-B, 5455 S. Blackstone in Chicago (Dr. O'Donnell's former address).

(12) Photocopy of an envelope from the office the Cook County Sheriff sent to Dr. O'Donnell at the above address, forwarded to Dr. O'Donnell's present address.

(13) Copy of lease dated September 8, 2000, between Dr. O'Donnell and Shurgard, a self-storage firm, for storage space.

(14) Dr. O'Donnell's undated curriculum vitae.

(15) Copies of Dr. O'Donnell's military records, showing that he was honorably discharged from the United States Army with the rank of sergeant, that he was in active service from 1966 to 1969, and was awarded the Bronze Star for heroism in Vietnam in 1969 for saving a man's life with an improvised crico-thyroidotomy.

**ANALYSIS**

Defendant's motion correctly points out that Dr. O'Donnell has not alleged an employment relationship between himself and the University, precluding a claim under Title VII or the ADEA. The possibility that Dr. O'Donnell might be employed by the University after finishing the graduate program is far too tenuous to call a rejection of an application for admission a denial

3

of employment. Dr. O'Donnell's attempts to characterize the University as a "labor organization" or employment agency are frivolous.

The non-renewal of Dr. O'Donnell's apartment lease also has no connection to any employment relationship. Federal law prohibits discrimination in housing, but nothing in the complaint suggests that Dr. O'Donnell's lease was not renewed for any reason other than the reason given in the management company's form letter: the University had acquired the building and intended to use it for student housing. The letter announcing the non-renewal of Dr. O'Donnell's lease was sent before Dr. O'Donnell sought admission to the public policy program, so it could not have been in retaliation for it.

It does appear that the eviction action was commenced after Dr. O'Donnell sought to apply to the graduate program, but Dr. O'Donnell does not allege that the suit was unnecessary, that he had properly surrendered possession of the apartment before suit was filed. But assuming this to be true, and further assuming that Wolin-Levin's actions as property manager are properly imputed to the University (something also not alleged), it is simply unbelievable that the University would have intentionally incurred the expense of a lawsuit it could not win, and that could have resulted in sanctions, solely in retaliation for Dr. O'Donnell's attempts to apply for admission to a graduate program. "Though the Supreme Court has opined that a complaint should not be dismissed for failure to state a claim unless it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief,' *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1957), that opinion is not a mandate to countenance balderdash." *Jennings v. Emry*, 910 F.2d 1434, 1441 (7th Cir. 1990).

While the University is correct that Dr. O'Donnell has no claim under Title VII or the ADEA, the University's motion does not discuss other statutes mentioned in the complaint.

4

Although Dr. O'Donnell has not stated a claim under any of them, it is necessary briefly to explain why.

When an educational institution enrolls a student it results in a contract between them. *Ross v. Creighton University*, 957 F.2d 410, 416 (7th Cir. 1992). Refusal to enter into a contract on racial grounds can give rise to a claim under 42 U.S.C. § 1981. *Bagley v. Ameritech Corp.*, 220 F.3d 518 (7th Cir. 2000); *Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996). Nevertheless, § 1981 was not enacted to establish racial equality generally, but was a response to legal disabilities imposed on African-Americans by southern states after the Civil War. Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens . . . ." Accordingly, only non-whites, or those perceived as such, may sue under § 1981, and a plaintiff must allege that he or she is a member of a racial minority to state a claim. *Morris*, 89 F.3d at 413. As Dr. O'Donnell is white, he has no claim under § 1981.

Title VI, 42 U.S.C. § 2000d, provides that "[n]o person ... shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." Title IX, 20 U.S.C. § 1681, extends the same prohibition to discrimination based on sex. Both statutes are enforceable by an implied private right of action in favor of injured individuals, but only with respect to intentional discrimination. *See Alexander v. Sandoval*, 532 U.S. 275, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001).

Assuming that the University's Irving B. Harris Graduate School of Policy Studies receives federal assistance (a plausible assumption though not alleged in the complaint), that assumption still leaves Dr. O'Donnell several allegations short of a claim. Dr. O'Donnell does not allege that he actually applied to the Irving B. Harris Graduate School of Policy Studies. He does not allege that women, non-whites, or non-Irish applicants having equal or lesser qualifications were

admitted. If his claim is based on the University's alleged refusal to send him application materials, he does not allege that the materials were actually available at the time he requested them, or that they were provided to others who asked for them at the same time and the same manner.

Dr. O'Donnell offers nothing that would support an inference of intentional discrimination based on race, sex or national origin. That inference cannot be drawn solely from the fact of his rejection. The University presumably knew from Dr. O'Donnell's name that he was male, probably white, and probably Irish. But given the position in our society of Irish Catholic males (one of whom was elected president forty-one years ago), it would be unreasonable to infer from the rejection of a male Irish Catholic applicant that he was rejected *because* he was Irish, Catholic or male. Such discrimination is not impossible, of course, but nothing in the complaint and exhibits permits the inference that Dr. O'Donnell was rejected for a forbidden reason.

The complaint and exhibits, however, point to other, lawful, reasons for the University's lack of interest in Dr. O'Donnell. Dr. O'Donnell sought admission to one of the most prestigious graduate schools in the nation by sending a large number of faculty members photocopies of a handwritten letter addressed to "Dear Teacher" and containing misspellings. Mid-August is not the usual time prospective students apply to graduate programs, or that universities expect to respond to them. The exhibits virtually compel the inference that Dr. O'Donnell wanted to apply to the University in order to avoid eviction from his apartment, a reason that the University would hardly have found compelling. This is corroborated by the fact that nothing in the complaint or exhibits indicates that Dr. O'Donnell pursued his quest for admission after vacating his apartment in late August or September of 2000.

Having found that the original complaint does not state a claim upon which relief may be granted, the court grants defendant's motion to dismiss the complaint.[1] At this point the court

---

[1] Because the court arguably has jurisdiction under Title VI and Title IX, the University's motion is granted on the grounds that the complaint fails to state a claim upon which relief may be granted, not for lack of jurisdiction.

6

would normally address the question whether the suit should be dismissed entirely, or whether Dr. O'Donnell should be granted leave to file an amended complaint. The question turns on whether, in the court's judgment, amendment would be futile. *See Garcia v. City of Chicago*, 24 F.3d 966, 970 (7th Cir. 1994).

Dr. O'Donnell has answered that question by filing an amended complaint in response to the University's motion. As a motion to dismiss is not a "responsive pleading," Dr. O'Donnell had the right to do so without seeking leave of court. Rule 15(a), Fed.R.Civ.P. Nevertheless, if an amended complaint does not even arguably cure the defects of the original, the defendant should not be required to respond to it. The court is directed to dismiss a suit "at any time" if the court determines that it is frivolous or malicious or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B).

Although an amended complaint normally completely supersedes the original complaint, before the court dismisses a *pro se* complaint it is required to consider the allegations contained in all documents filed with the court. *See Gutierrez v. Peters*, 111 F.3d 1364, 1367 & n. 2 (7th Cir. 1997); *Swofford v. Mandrell*, 969 F.2d 547, 549 (7th Cir. 1992). Accordingly, the court will read the amended complaint and exhibits together with the original complaint and exhibits.

The amended complaint includes a few additional factual allegations, and a number of new claims. Dr. O'Donnell alleges that "foreign individuals were given preference in Training, Job Employment Opportunities and Housing." Amd. Cmplt. at 1. In deciding a motion to dismiss for failure to state a claim, the court is not obliged to accept as true unsupported allegations of fact. *Snodderly v. R.U.F.F. Drug Enforcement Task Force*, 239 F.3d 892, 902 (7th Cir. 2001). This sweeping and improbable statement, implying that O'Donnell was rejected because he is American-born, is in tension with his assertion that he was rejected because he is of Irish descent. In any event, it does not state a claim absent an allegation that O'Donnell would have been accepted but for such preference.

Dr. O'Donnell asserts that he was told an application was "not available," Amd. Cmplt. at 4, but does not allege that others received applications at that time. Dr. O'Donnell makes a confused allegation that "the Defendant had an express policy which was enforced to cause Civil rights Deprivations. This was a widespread practice of the Defendant and although not authorized by written law was so permanent and well settled as to constitute a custom and usage with the force of law." Amd. Cmplt. at 4-5. This language appears to borrow heavily, and without understanding, from judicial opinions addressing the existence of a municipal policy in the context of claims under 42 U.S.C. § 1983. As the University is a private institution, none of its policies or practices can have "the force of law." Dr. O'Donnell does not say what the "policy" is, or was.

The amended complaint adds a number of claims that do not appear to have anything to do with his claim against the University. See, e.g., Count Five, "False Charges and Harassment," Count Seven, "Abuse of Process," Count Nine, "False Light." Count Ten "Defamation," Count Eleven, "Injurious Falsehood," Count Fifteen, "Privacy Violations." Perhaps these cryptic claims are intended to refer to the eviction action brought by Wolin-Levin to gain possession of Dr. O'Donnell's apartment. Assuming, again, that the relationship between the University and Wolin-Levin permits the University to be held liable for Wolin-Levin's actions, the court has no jurisdiction over these state-law tort claims in the absence of a genuine federal claim, since it is clear that Dr. O'Donnell and the University are both citizens of Illinois.

These claims are also frivolous. Under Illinois defamation law, statements made in the course of judicial proceedings are absolutely privileged. *See Hartlep v. Torres*, ___ Ill.App.3d ___, 756 N.E.2d 371, 373 (1st Dist. 2001). And a claim of malicious prosecution requires not only that the defendant have acted maliciously, but have used legal process for an improper purpose. *See Kirchner v. Greene*, 294 Ill.App.3d 672, 683-84 691 N.E.2d 107, 116-17 (1st Dist. 1998). Merely filing a lawsuit is not abuse of process, *id.*, and nothing suggests that the

8

eviction action was commenced for any other purpose than gaining possession of the apartment, a proper use of legal process. The amended complaint states that the University took legal action on October 12, 2000, "long after the plaintiff vacated his home." Cmplt. at 1. This conflicts, however, with Dr. O'Donnell's exhibits; although the summons directed him to appear on October 12, it was dated September 27, 2000. And one can infer from Dr. O'Donnell's September 8, 2000 contract with the storage company that he vacated his apartment around that date, which was not "long before" September 27, 2000, and was later than the date he was required to vacate the apartment, August 31, 2000.

The amended complaint, even read together with the original complaint, does not state a claim, and the court is not inclined to give Dr. O'Donnell a third chance. The court grants the University's motion and dismisses this action with prejudice.

The court also warns Dr. O'Donnell that filing papers in federal court without regard to their factual or legal grounds will have serious consequences. Rule 11(b) of the Federal Rules of Civil Procedure requires a reasonable investigation into *both* the facts asserted and the applicable law before filing a complaint, motion, or other paper with the court. Neither an attorney nor a *pro se* litigant may "`drop papers into the hopper and insist that the court or opposing counsel undertake bothersome factual and legal investigation.'" *Retired Chicago Police Ass'n v. Firemen's Annuity And Benefit Fund*, 145 F.3d 929, 934 (7th Cir. 1998)(*quoting Mars Steel v. Continental Bank, N.A.*, 880 F.2d 928, 932 (7th Cir. 1989). Violation of Rule 11 can lead to sanctions, including requiring the violator to pay the costs of responding to the offending paper.

Dr. O'Donnell is an educated person, and could have determined that Title VII and the ADEA apply only to an employment relationship. He was told by the EEOC that his allegations did not state a claim under federal antidiscrimination laws. Both this court and the Circuit Court of Cook County maintain public law libraries, and it appears that Dr. O'Donnell is able to conduct legal research.

It further appears from the complaint that Dr. O'Donnell made no investigation to determine whether there was any factual basis for his claim, i.e., that his rejection (if there was a rejection) was motivated by discrimination. It appears that he made no effort to find out how others were treated, and assumed that if he did not receive the responses he wanted that he was a victim of discrimination. The right to file suit without a lawyer is the right to assume, on one's own behalf, the task a lawyer normally assumes and the responsibility that goes with it; it is not the right to force others to defend against baseless claims.

This is only the court's impression of Dr. O'Donnell's filings, and should not be construed as a determination that he actually violated Rule 11. Before such a finding is made or sanctions imposed, Dr. O'Donnell will be given a chance to show that in fact he made a reasonable inquiry into the facts and law. As the University has not asked for sanctions, the court will not pursue the matter further. But Dr. O'Donnell is advised that the court has the power to raise the issue of compliance with Rule 11 on its own motion, and his further pursuit of apparently baseless claims will lead it to do so.

IT IS SO ORDERED.

Blanche M. Manning, Judge
United States District Court

DATED: DEC 12 2001